# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MASON MIKEL RUSS,

        Defendant-Appellant.

UNPUBLISHED
January 13, 2015

No. 318097
Wayne Circuit Court
LC No. 13-003898-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC ROBERY YBARRA,

        Defendant-Appellant.

No. 318166
Wayne Circuit Court
LC No. 13-003898-FH

---

Before: FORT HOOD, P.J., and HOEKSTRA and O'CONNELL, JJ.

PER CURIAM.

These consolidated appeals concern convictions arising out of a fight at a party. In Docket No. 318097, defendant Mason Mikel Russ appeals as of right his conviction, following a jury trial, of assault with intent to do great bodily harm less than murder, MCL 750.84. The trial court sentenced Russ to serve two years' probation and assessed $240 in court costs. In Docket No. 318166, defendant Eric Robery Ybarra appeals as of right his conviction, following a jury trial, of two counts of assault with intent to do great bodily harm less than murder. The trial court sentenced Ybarra to serve 19 to 120 months' imprisonment. We affirm in both appeals.

## I. FACTS

Sherry Beer testified that her daughter Ashley Beer held a birthday party at her family's home in Dearborn Heights on September 1, 2012. Martin Beer, Sherry Beer's son, estimated that about 20 or 30 people attended the party. According to Sherry Beer, one group of friends included Randy Zohfield, Richard Clearman, Jason Youmans, Robert Jones, Davey Downs, and

-1-

Cynthia Lindberg, who were friends with Ashley Beer. A different group of friends included Russ, Ybarra, Bridgette Harris, Anthony Trupiano, Jillian Sobek, William Hawley, and Rocky White, who were friends with Martin Beer. Zohfield testified that he did not know Russ or Ybarra before the party.

Sherry Beer asked Zohfield's group of friends to leave the premises at around 3:00 or 4:00 a.m. on September 2, 2012. Clearman, Youmans, and Jones testified that they saw someone choking Downs as they walked toward the street at the front of the house. Hawley testified that he saw someone attempt to choke Martin Beer. Jones and Youmans testified that someone tackled Jones. Trupiano and Sobek testified that they did not see anyone choke Downs or tackle Jones.

According to Zohfield, he was walking toward his car when someone told him that Downs had been choked. He returned to the porch alone to ask who had choked Downs. At that point, Russ punched him in the face. Russ repeatedly punched Zohfield in the face and Zohfield fell to the ground. When he stood up, Russ threw him to the ground, where Ybarra tackled him and punched him about five times in the face. Jones testified that he saw Russ punch Zohfield.

Clearman testified he clearly saw Ybarra punch Zohfield, and he ran toward Russ to protect Zohfield. According to Clearman, he ran into the front yard and was "blindsided" by a punch and knocked unconscious. Youmans, Jones, and Lindberg testified that they saw Ybarra kick Clearman in the face while he was unconscious. Jason McGrath, a photo booth operator, testified that he observed part of the fight and saw Ybarra punching Zohfield.

Members of Russ and Ybarra's group offered a different account of the fight. Martin Beer testified that someone approached him and asked him who choked Downs. According to Martin Beer, the unidentified person swung at him and missed, and then began choking him. Ybarra helped get the person off of him and then helped him "to the back." No one else joined in the altercation.

Sobek testified that she did not see Russ punch anyone, but she also testified that she was distracted and not paying close attention to the fight. Harris testified that she saw Ybarra enter the fight, but did not see him punch or kick anyone. Youmans and Jones testified that Ybarra was wearing shoes during the fight, including when he kicked Clearman in the face; however, Harris, Sobek, Martin, and Hawley testified that Ybarra was not wearing shoes during the fight.

Zohfield testified that Russ and Ybarra ran into the backyard of the house when police arrived. As a result of the fight, Clearman suffered a severe concussion and fractures to his jaw, cheekbone, and forehead. Zohfield suffered swelling to his face and lost a tooth.

## II. JURY INSTRUCTIONS, DOCKET NO. 318097

Russ contends that the trial court erred when it declined his request for a self-defense jury instruction because the jury could find that he acted in self-defense. Russ specifically contends that a self-defense argument was appropriate because Sobek testified that she did not see Russ punch anyone, and that Zohfield's group choked Martin Beer. We disagree.

When reviewing a claim of instructional error, this Court views the instructions as a whole to determine whether they adequately presented to the jury the issues to be tried. *People v Martin*, 271 Mich App 280, 337-338; 721 NW2d 815 (2006). We review de novo questions of law and review for an abuse of discretion the trial court's determination regarding whether a jury instruction applies to the facts of the case. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). This right arises from the defendant's state and federal constitutional rights to a fair trial by jury. US Const, Ams VI and XIV; Const 1963, art 1, § 20; *People v Vaughn*, 447 Mich 217, 226; 524 NW2d 217 (1994) (opinion by BRICKLEY, J.). Jury instructions "must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses, or theories if there is evidence to support them." *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975). A defendant is entitled to a jury instruction if he or she requests an instruction on a theory or defense that is supported by the evidence. *Riddle*, 467 Mich at 124. But if a defendant asserts an affirmative defense, the defendant is required to produce some evidence on all elements of that defense before the trial court must instruct the jury on the defense. *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013).

MCL 780.972(2) provides the circumstances under which a person may use force in self-defense:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

In this case, witnesses testified that Russ instigated the melee by punching Zohfield on the porch. Sobek testified that she did not see Russ punch anyone, but Sobek testified that she was distracted by a dog during the fight. Hawley testified that he saw someone cross the street to choke Martin Beer. However, the choking did not take place on the porch, and Martin Beer testified that his particular fight ended without further altercation.

Considering these witnesses' testimonies, there was little testimony in this case to support that Russ honestly or reasonably believed that force was necessary to protect another individual from *imminent* unlawful use of force. We conclude that the trial court's determination that the facts did not support a self-defense instruction did not fall outside the reasonable range of outcomes.

### III. COURT COSTS, DOCKET NO. 318097

Russ contends that the trial court erred when it imposed $240 in court costs. We conclude that, while the trial court erred, its error did not constitute plain error.

Russ did not raise this issue before the trial court. A defendant must raise an issue before the trial court to preserve it for this Court's review. *People v Russell*, 266 Mich App 307, 314; 703 NW2d 107 (2005). We review unpreserved issues for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and the error affected the defendant's substantial rights if it affected the outcome of the lower court proceedings. *Id*.

The trial court sentenced Russ on August 9, 2013. At that time, this Court's decision in *People v Sanders* provided that the trial court could impose generally reasonable costs under MCL 769.1k(1)(b)(*ii*). *People v Sanders*, 296 Mich App 710, 715; 825 NW2d 87 (2012). However, on June 28, 2014, the Michigan Supreme Court overruled *People v Sanders*. *People v Cunningham*, 496 Mich 145, 159; 852 NW2d 118 (2014). The Michigan Supreme Court ruled that MCL 769.1k(1)(b)(*ii*) only permits the trial court to impose those costs independently authorized by a statute. *Id*. at 158.

Here, the trial court imposed $240 in general court costs under MCL 769.1k(1)(b)(*ii*). This was an error because this provision did not permit the trial court to impose general court costs. However, at the time the trial court imposed those costs, case law from this Court held that such costs were permissible. Accordingly, the trial court's error was not "clear" or "obvious." We conclude that Russ has not shown a plain error.

## IV. SUFFICIENCY OF THE EVIDENCE, DOCKET NO. 318166

Ybarra contends that the evidence was insufficient to support his two convictions of assault with intent to do great bodily harm less than murder. Specifically, Ybarra contends that the evidence did not establish his identity, intent, or the number of victims. We disagree with each assertion.

A claim that the evidence was insufficient to convict a defendant invokes that defendant's constitutional right to due process of law. *People v Wolfe*, 440 Mich 508, 514; 489 NW2d 748 (1992). Thus, this Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence in a light most favorable to the prosecutor to determine whether a rational trier of fact could find that the prosecutor proved the crime's elements beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

Ybarra contends that the prosecutor did not sufficiently establish his identity or the number of victims because some witnesses testified that Ybarra was not wearing a shirt or shoes, and other witnesses testified that the person who kicked Clearman was wearing shoes. Ybarra also contends that the witnesses' testimonies were incredible and that they were likely mistaken about the identity of the person who committed the assaults.

This Court will not interfere with the trier of fact's role to determine the weight of the evidence or the credibility of the witnesses. *Wolfe*, 440 Mich at 514-515; *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). In this case, Zohfield testified that Ybarra tackled him and punched him in the face; Clearman and McGrath testified that they saw Ybarra punching Zohfield, and Youmans, Jones, and Lindberg each testified that they saw Ybarra kick

Clearman in the face when he was unconscious. Whether the witnesses were mistaken about who punched Zohfield or kicked Clearman was a matter of credibility for the jury to resolve. We conclude that a rational trier of fact could conclude that the prosecutor proved Ybarra's identity as the person who assaulted Zohfield and Clearman.

Ybarra also contends that the prosecutor did not sufficiently establish his intent to do great bodily harm because he did not use a weapon or have a prior relationship with the victims. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime, including the defendant's state of mind or intent. *Kanaan*, 278 Mich App at 622. A jury may infer the defendant's intent from physical violence. *People v Dillard*, 303 Mich App 372, 377; 845 NW2d 518 (2013). It is not necessary for the prosecutor to show that the defendant actually injured a victim to prove the defendant's intent to commit great bodily harm. *Id*. at 378. But if the defendant actually inflicted bodily harm, it can be strongly probative of the defendant's intent. *Id*.

In this case, Zohfield testified that Ybarra tackled him to the ground and punched him in the face five times. Zohfield lost a tooth. That Zohfield did not suffer further permanent harm to his body is not determinative of Ybarra's intent. Various witnesses also testified that Ybarra kicked Clearman in the face several times while Clearman was unconscious on the ground. Clearman suffered a serious concussion and multiple fractures to his face. Even though Ybarra did not use a weapon, he seriously injured Clearman. Given the extent of the victims' injuries and Ybarra's actions during the assault, we conclude that a rational trier of fact could find that Ybarra intended to do great bodily harm to Clearman and Zohfield.

## V. CONCLUSION

In Docket No. 318097, we conclude that the trial court did not abuse its discretion when it declined to issue a self-defense instruction under the facts in this case, and we conclude that the trial court did not plainly err when it assessed Russ $240 in court costs. In Docket No. 318166, we conclude that sufficient evidence supported Ybarra's convictions.

We affirm.

/s/ Karen M. Fort Hood
/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell

-5-